## Campbell et al. v. Prestonsburg Coal Co. et al.

(Decided June 22, 1934.)

78

S. S. WILLIS, JOE HOBSON and B. M. JAMES for appellants.

COMBS & COMBS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

This appeal involves the title to the minerals in a tract of land in Floyd county containing approximately 125 acres. While the record, including the evidence heard, is large, and counsel for the various parties have filed extensive original and supplemental briefs discussing a number of questions, the vital issue, as we see it, is simple, and only calls for a discussion of a few of the questions argued by counsel, and does not require a detailed statement of the pleading and evidence.

The essential facts are that in March, 1899, F. A. Hopkins and wife conveyed to Thos. D. Calhoun the land in controversy by a deed which as now appears on the record in the office of the county court clerk of Floyd county reads:

"This deed made this 30 day of March 1899 by and between F. A. Hopkins and Alice G. Hopkins his wife of the first part and Thomas D. Calhoun of the other part all of Floyd Co. Ky.

"Witnesseth that for and in consideration of the sum of Seventeen hundred dollars to be paid as follows: Four hundred dollars evidenced by note of even date hereof, due and payable four

months after date with interest at the rate of eight per cent from date until paid and five other notes for the sum of two hundred and sixty dollars each of even date hereof and due respectively in one, two and three, four and five years from date each bearing interest at the rate of six per cent per annum from date until paid for each of which notes a lien is retained upon the land hereinafter conveyed. The parties of the first part hereby sell and convey with covenants of General Warranty unto the said Thos D Calhoun and his heirs the following described tract of land lying on Bull Creek in Floyd County Ky, bounded on the north and east by the land of Lewis M. Dotson Jr., and on the west and south by the lands of Thos D Calhoun, Wm. Wells and Henry Wells and being the same lands conveyed to F. A. Hopkins, Daniel Shepherd and wife.

"To have and to hold the said tract or parcel of land unto the said Calhoun and his heirs forever. The intention of this Deed is to convey said land unto the said Calhoun and his children or heirs of his body.

"Witnesseth our hands this the date first above written.

"F. A. Hopkins<br>"Alice G. Hopkins."

In September, 1902, Thos. D. Calhoun and wife conveyed, or attempted to convey, to A. J. May and S. D. May, all coal, mineral, oil, gas, etc., in certain lands, including the tract conveyed by the Hopkins deed. In October, 1902, Thos. D. Calhoun conveyed the Hopkins tract, in connection with other lands, to L. M. Dotson, Jr., but excepted from the conveyance all coal and other minerals in the land. This land with the minerals excepted was conveyed by L. M. Dotson, Jr., to James T. Dotson, who in turn reconveyed it to Thos. D. Calhoun, who at the time of his death in October, 1907, was living on the Hopkins tract.

The Prestonsburg Coal Company claims title to the minerals in and under the Hopkins tract through the deed of Thos. D. Calhoun to the Mays by virtue of a lease from a grantee of the Mays. The Prestonsburg Coal Company and its lessor are parties to this appeal.

No mining operations have been opened on the Hopkins tract, but the Prestonsburg Coal Company began operations on an adjoining tract some years ago where tipples were built, and some time prior to October 24, 1928, and before this action was instituted, they extended their mining operations into and under the Hopkins tract, and were removing coal therefrom.

Some of the children and heirs at law of Thos. D. Calhoun instituted this action against the Prestonsburg Coal Company, its lessors and other persons claiming interest in the Hopkins tract, alleging that they are the owners and entitled to the possession of the coal and other minerals in the Hopkins tract. They sought to recover damages for the coal theretofore removed, to enjoin the removal of other coal and to have their title to the minerals in the tract quieted.

Defendants defend on the ground that plaintiffs took no interest in the land or the minerals under the Hopkins deed, and that the deed has been altered on the record by erasing the word "heirs" and substituting the word "children," and further affirmatively plead adverse possession more than 15 years before the institution of the action.

On final hearing it was adjudged that plaintiffs were not entitled to the relief sought and that their petition be dismissed and that they take nothing thereby, and they are prosecuting this appeal against the Prestonsburg Coal Company and its lessor.

It is argued by counsel for appellants that the deed in controversy, as hereinbefore set out, conveyed to Thos. D. Calhoun estate for life with remainder in fee to his children.

Counsel for appellee take the contrary view, and further maintain that it is established by evidence that, since the recordation of the deed, the record has been changed by erasing the word "heirs" in the third line from the bottom and substituting in lieu thereof the word "children," and that under the original deed as written and recorded Thos. D. Calhoun unquestionably took a fee-simple title to the property in controversy. A photostatic copy of the record reveals that there has been an erasure where the word "children" appears and indicates that the word "heirs" was first written there. However, there is a sharp conflict in evidence

as to the time the change in the record was made. Evidence for appellants indicates that at the time the instrument was recorded the clerk inadvertently wrote the word "heirs," but erased it and substituted the word "children," thus conforming to the wording of the original deed. On the other hand, the evidence for appellee indicates that the change was made many years after the deed was recorded.

Joseph M. Davidson, a banker engaged in banking business in Prestonsburg for a number of years, testified that he assisted Josie M. Davidson in making investments, and that in 1906 he lent Thos. D. Calhoun $1,000 for her taking a mortgage on the land in controversy to secure the loan; that, before he agreed to lend the money, he made an examination of the title from the record in the county court clerk's office; that he examined the deed in controversy, and at that time it contained the word "heirs" where the word "children" now appears; that since that time the word "heirs" has been erased and the word "children" substituted over it. He and Jos. D. Harkins, an attorney at Prestonsburg, testified that in their opinion the word "children" in the deed as recorded is not in the same handwriting as that of the person who wrote the other part of the record. There is also evidence that the word "children" is in heavier and darker ink than the other portions of the writing. The photostatic copy filed in evidence reveals that at least a portion of this word is darker, but this may be due to the fact that it was made over an erasure. There is also evidence and the photostatic copy reveals that there has been an erasure where the word "written" appears in the last line of the record, and that the word "mentioned" had formerly been inserted and erased.

W. C. Gobel, who has had considerable experience as a deputy clerk, testified that his mother recorded this deed. She was not a deputy clerk at the time, but a lot of unrecorded instruments accumulated in the clerk's office, and the clerk employed a number of persons to do the recording work for him, and in this way the deed books were distributed around to various places in the town where the work was done. While he would not be positive in his statement, he gave as his opinion that the word "children" appearing in the record is in the handwriting of his mother. A former clerk who has had much experience in writing and re-

cording instruments as well as in observing their writing gave as his opinion that the entire record was in the handwriting of the same person. The widow of Thos. D. Calhoun testified that the original deed was read to her, and that it contained the word "children," and that she made inquiry at the time why this was done. A daughter of Thos. D. Calhoun also testified that she heard the deed read and that it contained the word "children." There are many facts and circumstances, including the subsequent acts and conduct of the parties, tending to support the theory of each of the parties, concerning the record. On the whole, there is ample evidence to sustain the conclusion that the record was changed after and not at the time the deed was recorded.

Our conclusion that, notwithstanding the conflict, there is ample evidence to sustain appellee's theory that the record was changed subsequent to its recordation, calls for a consideration of the effect of the deed with the word "heirs" substituted for the word "children."

It is a cardinal rule in construing deeds as well as other writings that courts will look to the instrument as a whole in order to determine the intention of the parties. If the intention is clearly expressed, resort to adopted rules of construction is unnecessary. Unquestionably this deed as recorded with the sentence following the usual habendum clause omitted would be construed as conveying a fee-simple title to Thos. D. Calhoun. It would be susceptible of no other reasonable construction, since there is nothing in the instrument to indicate a contrary purpose or intention upon the part of the grantor.

The question then arises whether by this sentence at the end of the habendum clause it was intended to limit the interest granted to Thos. D. Calhoun to an estate for life with remainder to his children. Generally speaking, the word "heirs," "bodily heirs," "heirs of the body," and similar words are, and properly may be, used as words of limitation and not words of purchase, and, unless it appears from the instrument itself that they are used in a contrary sense, will be given their legal technical meaning. Dotson et al. v. Kentland Coal & Coke Co., 150 Ky. 60, 150 S. W. 6; Pelphrey v. Williams, 142 Ky. 485, 134 S. W. 884; Wilson v. Woodward, 190 Ky. 326, 227 S. W. 446; Prather

v. Watson's Ex'r, 187 Ky. 709, 220 S. W. 532; Meisberg v. Bryant, 184 Ky. 600, 212 S. W. 600. However, the foregoing and many other cases indicate that these terms may be and are often used synonymously or interchangeably with the word "children" as importing words of purchase; likewise, these and other authorities recognize that the word "children" ordinarily regarded and treated as a word of purchase may be and often is used in the same sense as "heirs," "heirs of the body," etc., in their technical legal meaning or as words of limitation. Therefore these words cannot always be given their commonly accepted technical meaning, but courts must necessarily determine from the instrument as a whole the sense in which they are used.

It appears in evidence, and is a matter of common knowledge at least in the legal profession, that F. A. Hopkins, who was the grantor and prepared the deed, was a lawyer of long experience and unusually well versed in the law respecting land titles and conveyances. It appears that it was his usual custom and practice to insert after the habendum clause an expression indicating the character of estate meant to be conveyed. If it had been the intention of the grantor to limit the estate by this instrument, as we are now considering it, he certainly might, and no doubt would have, chosen more appropriate words to have expressed that intention. Viewing the recorded instrument as a whole, with the word "children" deleted and the word "heirs" substituted, we find no authority for holding that it would convey anything less than a fee. To say the least, a doubt would remain as to the character of the estate that was intended to be conveyed, and it is an established rule that, where the terms of a deed are susceptible of two constructions, one favoring a fee and the other a lesser estate, it is the duty of the court to adopt the construction favoring a fee. Ely v. U. S. Coal & Coke Co., 243 Ky. 725, 49 S. W. (2d) 1021; Fairchild v. Fairchild, 237 Ky. 700, 36 S. W. (2d) 337; Denney v. Crabtree, 194 Ky. 185, 238 S. W. 398; Wilson v. Woodward, 190 Ky. 330, 227 S. W. 446. There are authorities indicating that the deed as it now appears of record might properly be construed as conveying a fee rather than a life estate, with the remainder over, and there are also authorities indicating a contrary view; therefore some doubt would remain concerning the title passing under a deed so written. Other

grounds might be assigned to sustain the chancellor's finding, but, as indicated at the outset, the ground assigned is sufficient, and renders further discussion unnecessary.

Judgment affirmed.