## Elrod et ux. v. Schroader et al.

(Decided Nov. 26, 1935.)

MILLIKEN & MILLIKEN for appellants.

RODES & HARLIN and RODES K. MYERS for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Affirming.

Mrs. Nancy B. Phillips, a widow, died intestate on October 13, 1932, at the advanced age of more than ninety years. Her husband had died more than twenty years previously. She left no children or lineal descendants, her heirs at law being brothers and sisters or descendants of brothers and sisters.

On August 13, 1930, Mrs. Phillips furnished $2,000 to Walter M. Elrod, son and only child of a deceased sister, to purchase a house and lot in Bowling Green which was deeded to him and his wife. Mr. and Mrs. Elrod executed their note for this sum to Mrs. Phillips. At the death of Mrs. Phillips, this note was in the possession of her sister Mrs. Jennie Schroader. On October 28, 1930, Mrs. Phillips executed and delivered to Mr. and Mrs. Elrod a writing releasing them from payment of the note, reciting that she donated this sum to them for their kindness in waiting on her.

On January 27, 1932, Walter M. Elrod executed a note to Mrs. Phillips for $600 covering money which he had borrowed from her. After her death, he was found to be in possession of this note and claimed that she had made him a gift of it.

Within a day or two after the death of Mrs. Phillips, Walter Elrod produced and caused to be recorded in the county court clerk's office of Warren county a deed from Mrs. Phillips to him for two tracts of land in Warren county containing in the aggregate 175 acres, this being the principal part of her landed estate and the most valuable part thereof.

The Bowling Green Trust Company qualified as administrator of Mrs. Phillips' estate.

On March 6, 1933, Mrs. Jennie Schroader and the other heirs of Mrs. Phillips instituted equitable action No. 14201 in the Warren circuit court against Walter M. Elrod and Hettie Elrod, his wife, alleging, in substance, in their petition as amended, that the deed hereinbefore referred to was not executed or delivered by Nancy Phillips; that at the time it was alleged to have been executed she was old, infirm, and unsound in body and mind and incapable of knowing the character or value of her estate, the objects of her bounty, or of appreciating the effect or the consequences of the deed or business transaction; that if she executed the deed, it was procured through the fraud, covin, and undue influence of Walter and Mrs. Elrod.

Thereafter the Bowling Green Trust Company, as administrator, instituted equitable action No. 14204 against Walter Elrod and wife and by their petition as amended sought to recover on the $2,000 note and the $600 note hereinbefore referred to. In the writing referred to as the $2,000 note, it is recited that such sum was furnished to purchase the house and lot for Walter Elrod and wife which they had agreed to pay in installments of $120 semiannually with interest and that Mrs. Phillips had a purchase-money and superior lien upon the house and lot to secure the payment thereof. It alleged that this indebtedness constituted a first and prior lien upon the house and lot.

By answer and by order, the allegations of the petitions in the two actions were controverted and it was affirmatively alleged that at the time of the execution of the deed for the 175 acres of land, Nancy B. Phillips was of sound mind and memory and a woman of strong mentality and able to take a rational survey of her property and to know its value, location, and description and to know the natural objects of her bounty, her obligations to them, and to dispose of her property according to a fixed purpose of her own; that the $2,000 note had long since been paid and satisfied in full; and that Mrs. Phillips had presented the $600 note to Walter Elrod as a gift.

The actions were consolidated, and after proof covering more than 500 pages of the record had been taken, it was adjudged that the administrator recover of Walter Elrod on the smaller note referred to in the pleadings the sum of $600 with interest from January 27, 1932, but it was further adjudged that the petition of the administrator in so far as it sought recovery on the $2,000 note referred to in its petition be dismissed and that it recover nothing thereon. It was further adjudged that the deed dated March 6, 1931, referred to in the pleading was null, void, and of no effect and that Walter Elrod and wife take nothing thereby; that the plaintiffs in action No. 14201 and the other heirs at law of Nancy Phillips were entitled to the immediate possession of the 175 acres of land referred to in the deed. The court sustained exceptions to the evidence of Walter and Hettie Elrod concerning transactions with Nancy Phillips and also sustained exceptions to like evidence of appellees who testified.

Walter M. Elrod and wife are appealing from the

judgment in so far as it permits recovery on the $600 note and in so far as it sets aside and holds the deed to the 175 acres of land to be null and void.

While the judgment recites that plaintiffs in the consolidated actions excepted to so much thereof as denied recovery on the $2,000 note and prayed an appeal, and counsel for appellees have devoted a considerable portion of their brief to this phase of the case, we find that no cross-appeal has been asked or granted.

In a long and well-considered opinion of the chancellor found in the record, the evidence is discussed at length and we find, as stated therein, that the bars were let down and witnesses testified freely without any regard for established rules of evidence. Much of the evidence as is pointed out in the opinion was incompetent. It is stated in substance that there was no competent evidence to show that at the time Mrs. Phillips furnished the money to purchase the house and lot in Bowling Green and executed a release of the $2,000 note she was not competent to understand the nature of her acts or that she was not acting freely and of her own volition, but that, on the contrary, there was competent evidence to show that she did have such mental capacity and acted freely and voluntarily. It is further said, however, by the chancellor that the facts and circumstances surrounding the execution of the deed to the farm are quite different from those surrounding the deed to the city property and the execution of the release to the $2,000 obligation.

The evidence shows that a few years before Mrs. Phillips' death she had, in addition to her real estate, something over $10,000 in government securities. These were sold and the proceeds or at least part thereof were invested in other securities which from time to time were sold and at her death she had only $1,500 in bonds and no cash except a deposit of less than $5 in the bank. She drew a pension of $40 per month. In accounting for large expenditures made by Mrs. Phillips in the latter years of her life, it is shown that she spent $1,000 or more for the nursing and care of an invalid sister, a considerable portion of which was paid to Mrs. Elrod. Considerable sums were paid for fencing and other improvements on the farm and, in addition to the $2,000 furnished to Walter Elrod and wife to pay for the house and lot in Bowling Green, it is

shown that he received other large sums from his aunt. In summing up the evidence on this phase of the case, the chancellor said:

> "Mr. and Mrs. Elrod have obtained the bulk of the property of Mrs. Phillips in the last two years under conditions and circumstances that were most peculiar and unusual."

However, after discussing the evidence bearing on the question of mental capacity, undue influence, etc., it is further said:

> "It strikes this court as not being necessary to decide the question whether the deed to the farm was obtained by undue influence, since the court is of the opinion the deed to the farm passes no present interest, is testamentary, and therefore invalid as a deed. Again, the court is of the opinion there was no delivery of this deed to the grantees,"

and these are the grounds on which the judgment setting aside and holding the deed to be invalid is based.

John Haynes, a brother of Mrs. Elrod and a rural mail carrier on a route leading by the home of Mrs. Phillips, was a notary public and testified that he took the acknowledgment to the deed and the certificate of acknowledgment bears out this statement. He testified that he usually attended to such transactions for Mrs. Phillips and that she had told him several times previous to the execution of the deed that she wanted him to take an acknowledgment; that on the day the deed was executed Walter Elrod came out and stopped him, stating that Mrs. Phillips wanted to execute a deed; that she came out with the deed, stating that she had gotten the papers fixed and wanted him to take her acknowledgment; that he asked her if she understood it and she said she did and he read it to her and asked her if she acknowledged it to be her act and deed and she signed and said she did; that she sat down on the running board of his automobile, placed the deed on a stamp book, and signed it; that Mrs. Phillips could see well enough to sign the deed; and that neither he or Walter Elrod assisted her in any way in so doing. In this connection it may be said that nurses who waited upon Mrs. Phillips and a number of other witnesses who were intimately acquainted and associated with her testified that at the time the deed is said to have been

executed and for a considerable time theretofore and up until her death she was practically blind; that while she insisted on signing checks and other instruments executed by her, her vision was so impaired that she could not see where to sign her name; and that some one would have to direct her hand to the place for her signature. The evidence on this point is of a very persuasive and convincing character. Mr. Haynes testified that after Mrs. Phillips signed and acknowledged the deed she took it and walked back into her house and so far as he knew never delivered it to Mr. Elrod. Mr. Haynes was asked if Mrs. Phillips stated why she did not have the deed recorded and replied, "She just said she wanted it held off," and she just said, "It is not to be recorded, it is mine as long as I live." Dr. Martin testified that the day after the deed was acknowledged Walter Elrod brought it to him and asked him to put it in his safe and keep it and he kept it in his safe until Walter Elrod called for it after the death of Mrs. Phillips.

The deed to the 175 acres of land is in the usual form of warranty deed except that it contains the following provision:

"This conveyance and sale of said property shall take effect at the death of the said party of the first part and until then the first party reserves the control and ownership of the said land."

It is maintained by counsel for appellants that the deed when read and considered as whole clearly evinces a purpose to convey the property to Walter Elrod, but reserving a life estate in the grantor; that it therefore passes a present interest to him and was not testamentary in character. On the other hand, it is contended by counsel for appellees that under the quoted provision of the deed, Mrs. Phillips not only retained control but the full ownership of the land during her life, and it was not intended thereby that any interest should pass to appellants until her death, and therefore the chancellor was correct in his finding that the instrument was testamentary in character, and not having been executed with the formalities required by law, it was ineffectual for any purpose.

In the case of Hunt v. Hunt, 119 Ky. 39, 82 S. W. 998, 26 Ky. Law Rep. 973, 68 L. R. A. 180, 7 Ann. Cas. 788, the court was called upon to construe an instru-

ment in the form of a deed which, however, contained the following provision: "This deed is not to take effect until the death of said John Hunt and S. E. Hunt." It was contended on one side that the paper though in the form of a deed was testamentary in character and revocable by John Hunt in his lifetime. While on the other hand it was insisted that the quoted provision when taken in connection with the other parts of the deed clearly retained a life estate in the father and mother; in other words, that the land was conveyed to the son, and some effect should be given to the other clauses of the deed.

After stating that there was an irreconcilable conflict of authorities on the question, the opinion cited a number of cases from foreign jurisdictions involving instruments in the form of a deed containing provisions similar to the Hunt deed or of like import holding them to be good as a deed reserving a life estate in the grantor; and then took up and discussed quite as many cases from other jurisdictions holding to the contrary view. It was pointed out that in the first line of cases the rule was rested "on the ground that as the instrument contains words of present grant, covenant of warranty, and the like, and is authenticated or acknowledged as a deed, some force must be given all the parts of the instrument, and such a construction must be given to it as will make the instrument effective, rather than one that would deny it any operation; and therefore the words that the instrument is not to take effect until the death of the grantor must be construed as a clumsy way of expressing that the deed is not to take effect in possession or in the enjoyment of the property until the grantor's death." The opinion followed the first line of cases holding that the grantees took a present interest in the property vesting at the time of its delivery, but taking effect in possession at the time of the death of the father and mother. See, also, Rawlings v. McRoberts, 95 Ky. 346, 25 S. W. 601, 15 Ky. Law Rep. 771; Ward v. Ward, 104 Ky. 857, 48 S. W. 411, 20 Ky. Law Rep. 986; Hall et al. v. Meade et al., 244 Ky. 718, 51 S. W. (2d) 974.

It will be noted, however, that the quoted provision under consideration here is materially different from the provision of the instrument referred to in the first line of cases discussed in the opinion in the Hunt Case. It not only provided that the conveyance should not

take effect until the death of Mrs. Phillips, but she reserved control and ownership until that time. Generally speaking, "ownership" embodies the idea of exclusive right of possession, enjoyment, and disposal—the right by which property belongs to some one in particular to the exclusion of all others and claim of ownership is synonymous with claim of title. Stryker v. Meagher, 76 Neb. 610, 107 N. W. 792; Ducre v. Milner (La. App.) 140 So. 158; Thompson v. Kreutzer, 112 Miss. 165, 72 So. 891. In Ohio Valley F. & M. Ins. Co.'s Receiver v. Skaggs, 216 Ky. 535, 287 S. W. 969, 970, it is said:

> "The essence of the ownership of a thing is that aid which organized society will through the courts, as its agents, give to one individual to the exclusion of all others, to take or keep possession of it."

In the case of Hall et al. v. Drake et al., 232 Ky. 127, 22 S. W. (2d) 568, a writing in the form of a deed providing that the first party should not part with ownership during his lifetime but that at his death the party of the second part should become the owner in fee of the property was held to give the grantee a present interest and to be valid as a deed. The deed, however, contained a further provision that the grantor retained the right at his option to sell and dispose of timber of the value of $250, but in case of failure to exercise the right, the timber was to remain the property of the grantee and that compensation for right of way across the land should be paid to the grantee and spent for improvement of the land. It was further provided that neither party during the life of the first party should in any way convey any of the land described in the deed.

It is a fixed rule in the construction of deeds and other writings to ascertain from the instrument as a whole the intention of the maker and to give effect to that intention, and if the maker's intention is manifest, the writing should be construed without regard to technical rules of construction. Hall v. Meade, 244 Ky. 718, 51 S. W. (2d) 974; Ramey et al. v. Ramey, 195 Ky. 673, 243 S. W. 934.

In Cox v. Colossal Cavern Co., 210 Ky. 612, 276 S. W. 540, it is indicated that in arriving at the intention of the maker of a deed or other writing the language thereof should always be read and considered in the light of the attending circumstances and the relation of

the parties thereto. See, also, American National Bank v. Madison, 144 Ky. 152, 137 S. W. 1076, 38 L. R. A. (N. S.) 597; Milam v. Stanley, 111 S. W. 296, 33 Ky. Law Rep. 783, 17 L. R. A. (N. S.) 1126. In the latter case as in numerous cases from this jurisdiction it has been held that in determining whether a paper is testamentary, the court will look not only to the language of the instrument but to the situation of the maker; that a will may be in any form, the words used to express the testator's intention being immaterial if it sufficiently appears from the writing that he was making testamentary disposition of his property. See Little v. Sizemore, 208 Ky. 135, 270 S. W. 729, 730, and cases therein cited, wherein it was held that "if no binding obligation is created, and no present interest passes, the instrument is revocable and will be deemed testamentary in character." In that case the writing was in the form of a promissory note payable at the death of the maker and probation thereof was refused on the ground that it was a note and not a will. On appeal to this court the judgment was affirmed. See, also, Rudd v. Rudd, 184 Ky. 400, 214 S. W. 791, where it was held that a writing by a father conveying property to his children and retaining control thereof during his life and providing that distribution be made upon his death was testamentary in character.

In Webster et al. v. Lowe, 107 Ky. 293, 53 S. W. 1030, 1031, 21 Ky. Law Rep. 998, the court quotes with approval from a foreign case (Johnson v. Yancey, 20 Ga. 707, 65 Am. Dec. 646) the following:

"The doctrine is now too well settled to need argument or authority to sustain it, that an instrument may be in the form of a deed, signed, sealed, and delivered as such; still, if it discloses the intention of the maker respecting the posthumous destination of his property, and is not to operate until after his death, it is testamentary only."

Upon a careful consideration of all the authorities cited, it is obvious that the question is a close one. In determining the question, the chancellor gave consideration to attending circumstances and the condition of the parties as shown by extrinsic evidence to which there was no objection. The only witness competent to speak on the subject testified that immediately after its execution Mrs. Phillips took possession of the writing and stated that it was not to be recorded but was hers

during her lifetime, evidently referring to the writing. It was not prepared by Mrs. Phillips or under her direction, but was prepared by an attorney of learning who certainly might and would have chosen more appropriate words to pass a present interest and retaining merely a life estate. The instrument was prepared at the suggestion of Walter Elrod and in his presence. The attorney testified that as he recalled Mrs. Phillips had spoken to him about making a will, but said nothing about making a deed. If all the facts and circumstances be taken into consideration, it is apparent that the chancellor did not err in holding the purported deed to be testamentary in character. However, if it should be determined that the chancellor erred in this respect, the record amply sustains his finding that there was no delivery of the deed. It is a rule of universal application that to be effective a deed must be delivered with the intention to pass title. Sullivan v. Bland, 215 Ky. 57, 284 S. W. 410; Lewis et al. v. Shell, 205 Ky. 624, 266 S. W. 254; Dunbar v. Meadows, 165 Ky. 275, 176 S. W. 1167, 1169.

In the latter case it is said:

"It is essential to the validity of a deed that there be a delivery. The question of delivery is generally one of intention of the parties, and there must be some act or declaration from which an intention to deliver may be inferred, and they must be of such a character as to deprive the grantor of the possession and control of the instrument. It does not follow that there has been a delivery of the deed from the fact that at some time it may have been in the possession of the grantee, for at such times it may have come into the hands of the grantee without any intention on the part of the grantor to make a delivery."

Taking into consideration the cordial and confidential relation of the parties, the fact that Mrs. Phillips was practically blind and that appellant had access to her papers, coupled with the fact that the deed turned up in the possession of Mr. Elrod the day after it was executed, and when, according to the evidence of Haynes, a close relative of appellants and their witness, Mrs. Phillips expressed intention to retain possession of it and not permit it to be recorded until her death, it is manifest that any inferences of delivery that

might arise from appellants' possession of the paper is effectively overcome.

Although the judgment setting aside the deed might be sustained on other grounds set forth in appellees' pleadings, the conclusion we have reached renders it unnecessary to give consideration to that phase of the case.

Judgment affirmed.