# Hays et al. v. Kentucky West Virginia Gas Co. et al.

March 13, 1942.

Clark Pratt and T. E. Moore, Jr., for appellants.

Combs & Combs for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The sole question involved in this case is the correct interpretation of a writing executed by Charley Sturgill to his wife, Frankie Sturgill, and others (but who the latter are is the question) on May 13, 1918, which writing purported to convey the tract of land owned by Charley Sturgill in Knott County, which it is stated in the record at one place as containing 200 acres and at another as containing 250 acres. At that time the vendor, Charley Sturgill, had living adult daughters, each of whom had married, and two living sons; also a granddaughter, the only heir of a deceased daughter. One of the sons was named Pearl Sturgill, and the other one Beckham Sturgill, the first of whom, it appears, was occupying some portion of the entire tract at the time the writing was executed. It is so inartistically drafted and so fails to follow the ordinary forms of inter partes conveyances of land that we feel it to be essential—in order to place before the reader the exact situation—to set out the entire instrument as a part of this opinion, since our conclusion (as will later appear) is based upon its entire phraseology viewed from its "four corners." Omitting signature, attesting clauses, etc., the writing is thus phrased:

"This Indenture, made and entered into, this the 13th., day of May, 1918, between Charley Sturgill of the

County of Knott, and State of Kentucky, of the first part and Frankie Sturgill and her heirs, of County of Knott, and State aforesaid, of the second part,

"Witnesseth: That the party of the first part, for and in consideration of the sum of One Dollar in hand paid, and for the Love and Affection I have for my wife and children, and the party of the first part is to stay on said land and control and cultivate the same during his lifetime, and at his death, this deed is to remain in full force and effect. I bequeath that Rosa Branham has already had her part of my estate, the receipt of which is hereby acknowledged, have bargained, sold, and by these presents do bargain, sell and convey unto said parties of the second part a certain tract or parcel of land lying in Knott County, Kentucky, and described as follows:

"Lying and being on Jones Fork of Right Beaver Creek and bounded as follows: On the North by the lands of Riley Casebolt, and on the West by the lands of Andy Watson and J. M. Gibson; on the South by J. M. Gibson and Lark Slone; on the East by the lands of Riley Casebolt and Isom Gibson, containing 200 acres.

"I want Pearl Sturgill to have the land where he now lives at our death and for Pearl to pay the rest of the heirs what he thinks is right *at our death,* and I want Beckham Sturgill to have the old home place and help pay the rest of the heirs in proportion. I want Violet Sturgill to have an equal part with the rest of the heirs, being the same land conveyed by Charley Huff to grantor herein by deed, dated Jan. 22, 1901, and recorded in Deed Book No. 9 at page 106, records of the Knott County Court Clerk's Office.

"To Have and to Hold said tract of land, with the appurtenances thereunto belonging, unto the parties of the second part, their heirs and assigns forever, with covenants of General Warranty." (Our emphasis.)

The grantor, Charley Sturgill, died intestate a resident of Knott County in 19—, but his wife, Frankie Sturgill, survived him until her death in 1939. Before the death of Charley Sturgill, and on November 30, 1926, he and his wife jointly leased the land referred to in the paper he executed on May 13, 1918, to the Ivyton Oil and Gas Company "for the purpose of operating, producing and marketing oil and gas therefrom" together with the usual mining rights, which lease was placed of record,

and it was afterwards extended by some of the Sturgill heirs joining in the extension, and while in force it was acquired from the then lessee by the appellee, and a defendant below, Kentucky West Virginia Gas Company. After so acquiring the lease, and while it was still in force, it sunk and developed a more or less paying gas well on the land, from which it extracted and appropriated the flow of gas therefrom for more than three years before the filing of this action in the Knott Circuit Court against it and others on June 6, 1940.

The petition as originally drafted and filed named all of the heirs of Charley Sturgill and wife as plaintiffs, and it alleged that they jointly owned the fee in the land from which the defendant, Kentucky West Virginia Gas Company, had extracted gas from the well it developed and produced, and that the said defendant had no right to take any mineral or other part of the land and appropriate it to its own use; that in doing so the defendant was a trespasser and had thereby appropriated the mineral it had extracted to the value of $20,000, for which sum plaintiffs prayed judgment against that defendant, and that it be enjoined from future operation of the well and be required to abandon the premises.

After the action was filed the two sons of Charley Sturgill—Pearl and Beckham—appeared and moved the court that their names be stricken as plaintiffs in the action and that they be made defendants, which motion was sustained. They then filed their answer and cross-petition containing practically the same defense made by the Kentucky West Virginia Gas Company, which was rested on the lease transactions hereinbefore referred to, and a denial that the other plaintiffs, who were left in the action after the withdrawal of Pearl and Beckham Sturgill, acquired any interest in the land under the paper executed by their father, Charley Sturgill, on May 13, 1918, and especially that they had no interest in any of the oil and gas under the land, since whatever might be the interpretation of that document—even according to plaintiffs' contention as the proper interpretation thereof—their mother was given the fee to the tract of land and that her children as her heirs inherited it from her upon her death. But if she was conveyed the fee by the inserted writing supra, then she had parted with her title to the gas and oil under the land by her joining in the lease, or in its extensions, conferring the right upon

the lessee to extract such minerals; and, therefore no order of ouster of the operating lessee in this case or restraining it from future operation, or other judgment could be rendered herein against it. So much for an analysis of the situation as contended for by plaintiffs, although their contention should be accepted as the correct one.

But, the defendant, Kentucky West Virginia Gas Company, and Pearl and Beckham Sturgill, stoutly defended upon the ground that the instrument executed by Charley Sturgill on May 13, 1918, as hereinabove inserted, when construed under modern rules for the interpretation of such instruments, reserved a life estate in the involved premises to himself, and after his death, if his wife survived him, then a like estate to her, and then provided that the remainder after the death of the wife, if she survived her husband—or at the latter's death, if he survived his wife—should be held by his two sons, Pearl Sturgill and Beckham Sturgill, and he designated in general terms the two portions that each should have in the entire tract; and that they having joined in the lease under which the Kentucky West Virginia Gas Company was operating—or acquiescing in it and seeking its enforcement—the other original plaintiffs in the case had no interest whatever in the involved tract of land, either to its surface or any minerals thereunder. That interpretation seems to be the one adopted by the court in rendering the judgment appealed from; but, whether so or not, we are unable to say—there being nothing but an order sustaining demurrers filed to the petition and its dismissal after plaintiffs declined to plead further.

The inserted instrument supra, thus submitted for our interpretation, is most inartistically and awkwardly framed, and, perhaps, under ancient technical rules of English courts—as well as American courts following the English opinions for sometime after our independence—the involved instrument would be given a different interpretation from that which more modern rules and practice would suggest. That modern rule discarded some, and limited others of such ancient rules for the interpretation of such instruments and substituted therefor what has come to be known as the "Rule of Intention." The route to be traveled by the courts, in exercising their interpretative jurisdiction in such cases under such modern rule, is thus stated in an annotation in 84

A. L. R. page 1063: "The modern and now widely accepted rule, the strongholds of which appear to have been Kentucky, North Carolina, and California, has for its cardinal principle the proposition that, if the intention of the parties is apparent from an examination of a deed 'from its four corners' without regard to its technical and formal divisions, it will be given effect even though, in doing so, technical rules of construction will be violated. And by these courts it is held that the rule that an habendum creating an estate contradictory or repugnant to that given in the granting clause must be rejected is not a rule of property, but is merely a rule of construction, which will be resorted to only where the court cannot determine which of the clauses was intended to be controlling."

That statement is supported by cited opinions from federal courts, and from the States of California, Georgia, Iowa, Kansas, Kentucky, Maine, Maryland, Michigan, Mississippi, Missouri, Montana, New York, North Carolina, Oregon, Pennsylvania, South Carolina, Tennessee, Vermont, Virginia and West Virginia. There are twenty-one cited Kentucky cases in that annotation, in which this court applied that modern rule in the interpretation and construction of such instrument, although in many of the cases a different interpretation would have been given had the extreme technical rules of English courts, and some earlier American opinions following the gaining of our independence, been followed. At least four later cases in which we continued to apply such modern rule are: Campbell v. Prestonsburg Coal Company, 258 Ky. 77, 79 S. W. (2d) 373; Elrod v. Schroader, 261 Ky. 491, 88 S. W. (2d) 12; Preston v. Harlow, 276 Ky. 799, 125 S. W. (2d) 726; and Sherman v. Petroleum Exploration, 280 Ky. 105, 132 S. W. (2d) 768, 132 A. L. R. 137. Perhaps one of the strongest cases, portraying this court's transition in the adoption of the modern rule referred to, is that of Preston v. Wells, 187 Ky. 417, 219 S. W. 173, and in which the writer cites a number of prior cases, some of which are listed in the annotation supra.

Under that rule—permitting and requiring a survey of the whole instrument by the court—these facts are made to appear in this case as embodying the intention and purpose of the vendor in executing the above inserted instrument: (1) That he intended it to be an

*inter partes* deed, and not a testamentary paper; (2) that he reserved to himself a life estate in the described premises, and also a similar estate to his wife if she survived him; (3) that the interest of his two sons should commence, "at our death," which evidently meant the death of himself and his wife; and (4) that his two sons were to have, absolutely in remainder after the death of himself and wife, agreed upon portions of the land, but which were not specifically described in the writing.

It is true that in referring to the already satisfied interest of his daughter, Rosa Branham, he employed the word "bequeath," the technical application of which is confined to testamentary papers, but there can be no question that in the portion of the writing referring to her interest, no estate was attempted to be created in her, and the words, "I bequeath that," are exclusively surplusage and without any elucidating effect. That the executioner of the writing intended to reserve a life estate only in his wife is clearly shown by the words, "at our death," appearing in the part of the instrument conveying the remainder to his two sons. Such interpretation (limiting the interest of Charley Sturgill's wife to one for her life, instead of a fee, which other parts of the deed if controlled by the ancient rule, would require an interpretation giving the fee to the vendor's wife) is essentially required under the modern rule supra in carrying out and enforcing the purpose of the maker of the instrument under consideration, when that purpose may be ascertained from its entire language, regardless of other expressions in isolated portions thereof. That the executed paper herein was intended to operate as a deed is clearly indicated by its being designated as "This Indenture," which is well known as applicable to an inter partes writing, most generally employed in conveyances of real estate.

A reading of the domestic cases referred to—including the additional one not contained in the annotation supra of Babb v. Dowdy, 229 Ky. 767, 17 S. W. (2d) 1014 —amply supports the conclusions we have reached as to the correct interpretation of the document executed by Charley Sturgill on May 13, 1918, and which sustains the judgment appealed from, and it is affirmed.