## Bell et al. v. Holdbrook et al.

Jan. 12, 1945.

Napier & Napier for appellants.

Lewis E. Harvie and Harry L. Moore for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE TILFORD—
—Affirming.

This action was instituted by the widow and children and the children of deceased children of Robert Bates, Jr., to set aside as void the judgment and sale thereunder in an action instituted by the executor of Bates' will to subject the testator's real property to the payment of his debts. The appellee, Holdbrook, is the present title holder of the property so sold; the appellants are the descendants and widow of Bates; and this appeal is from a judgment of the Chancellor dismissing the petition.

The main grounds on which the judgment and sale in the preceding action are attacked are that the appellants, Helen Bates Bell and Hazel Bates Cookener, then infants under fourteen years of age, were not brought before the Court in the manner prescribed by Section 52 of the Civil Code of Practice; that several of the adult defendants were not served with process; that the widow was not allotted a homestead exemption; and that a portion of the lands sold belonged to the widow and was not subject to her husband's debts. But it is unnecessary either to name all of the irregularities charged, or to discuss their effect if, as contended by the appellee, Holdbrook, the widow, who, for the reasons hereinafter stated, is bound by the judgment, acquired the fee-simple title to her husband's real estate by the terms of his will.

The will, omitting the general description in the second paragraph of what appears to have been all the land owned by him, is as follows:

"In the Name of God Amen. I, Robert Bates Jr., of Thornton, County of Letcher and State of Kentucky, being of sound and disposing mind and memory, and wishing to make just disposition of all my worldly effects, do hereby make, publish and declare this to be my last will and testament, hereby revoking all former or other wills or testamentary writings, of whatsoever nature, heretofore made or signed by me.

"First: I direct that all my just and honest (debts) and funeral expenses be paid by my executor as soon after my decease as possible.

"Second: I will and bequeath to my dearly beloved wife, Eliza Bates and her heirs, the following described

property: A certain tract of land being and lying on Thornton Creek, a tributary to the Kentucky River in the County and State aforesaid and bounded as follows: * * *

"Third: I give, devise and bequeath all household and kitchen furniture of every sort and kind, together with the general merchandise I may own at my death and all other property, real personal and mixed that I may own of every kind wheresoever situated, to my wife, Eliza Bates, and her heirs, absolutely and in fee simple.

"Fourth: I nominate and appoint my wife, Eliza Bates, and Lloyd Webb, my son-in-law, and the survivor of them, executrix and executor of my will:—In witness whereof I have hereunto subscribed my name this 8 day of June, 1921.

"Robert Bates, Jr."

When it is observed that no mention was made by the testator of his numerous living children or of his two grandchildren hereinbefore referred to, and that no limitation whatsoever was placed upon his widow's power of disposition, it becomes at once apparent that unless we are to disregard the provisions of KRS 381.070 and Paragraph (1) of KRS 381.060, as construed in numerous opinions, we have no alternative to holding that the title acquired by the widow was absolute. The Statutes referred to are too well known to the Bar to require their reproduction here. It is sufficient to say that the thoroughly established rule adduced therefrom is that the word "heirs," when used in phrases similar to those employed by the testator, Bates, in the second and third paragraphs of his will, are words of limitation vesting the fee, unless a contrary intention is manifest from the language of the instrument or deducible from the circumstances or situations of the parties. Among the numerous authorities on the subject may be cited, McFarland et al. v. Hatchett et al., 118 Ky. 423, 80 S. W. 1185; Belcher et ux. v. Ramey, 173 Ky. 784, 191 S. W. 520; Campbell et al. v. Prestonsburg Coal Co. et al., 258 Ky. 77, 79 S. W. 2d 373; McGinnis et ux. v. Hood et ux., 289 Ky. 669, 159 S. W. 2d 1018.

Having determined that the children and descendants of the testator acquired no interest in the property, it is obvious that it is immaterial whether they were bound by the judgment under which it was sold. That

the widow's only remedy, if errors were committed against her, was to appeal from the judgment and the order confirming the report of sale, a remedy now lost to her through the lapse of time, is also patent, since she was served with summons, testified in the action, and filed exceptions to one of the reports of sale. Moreover, on November 18, 1933, she filed a suit in the same court attacking the judgment and seeking an injunction against the purchaser, which was denied, and thereafter attorned to the appellee, Holdbrook, by leasing from him a portion of the real estate.

It is necessary to consider only one further question, namely, whether the Chancellor erred in refusing to vacate the Bench during the trial of the present action. The grounds on which appellants attempted to compel him to do so were that he had rendered the allegedly erroneous and void judgment in the former suit, and hence would not give them a fair and impartial trial in the present action. It is sufficient to say that if an erroneous decision by a judge disqualified him from thereafter presiding over litigation in which that decision was attacked, it could be plausibly argued that a circuit judge could not, with propriety, preside at a second trial of an action following the reversal by this Court of the judgment entered by him at the first trial. It is true that we have been zealous in preserving the rights of litigants to trials before impartial and disinterested judges, and that when facts are alleged showing that impartiality is lacking, their existence may not be put in issue. But we have also uniformly held that the mere belief of a litigant unsupported by facts from which the impropriety of a judge presiding may be inferred, is insufficient to prevent him from doing so.

Judgment affirmed.